# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                                                                       No. CR 16-4566 JB

PETER CALVERT-CATA,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on: (i) the Defendant's Objections to Pre-Sentence Report, filed July 13, 2017 (Doc. 40)("Defendant's Objections"); (ii) the United States' Sealed Objections to Pre-Sentence Report and Response to Defendant's Objections to Pre-Sentence Report, filed July 17, 2017 (Doc. 41); (iii) the United States' Sealed Sentencing Memorandum, filed July 21, 2017 (Doc. 42)("Sentencing Memorandum"); and (iv) the Defendant's Sentencing Memorandum and Objection to Part of a Special Condition of Supervised Release, filed July 25, 2017 (Doc. 43)("Defendant's Sentencing Memorandum"). The Court held a sentencing hearing on August 14, 2017. The primary issues are: (i) whether the USSG § 2A3.1(b)(1) 4-level enhancement applies to the guidelines calculation of Defendant Calvert-Cata's sentence; (ii) whether the USSG § 2A3.1(b)(4)(B) 2-level enhancement applies to the guidelines calculation of Calvert-Cata's sentence; (iii) whether the USSG § 3A1.1(b)(1) 2-level enhancement applies to the guidelines calculation of Calvert-Cata's sentence; (iv) whether the USSG § 4B1.5(b)(1) 5-level enhancement applies to the guidelines calculation of Calvert-

---

[1]In its Sealed Memorandum Opinion and Order, filed August 17, 2017 (Doc. 53)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court files a public version. See Sealed MOO at 1 n.1. The Court incorporates herein the proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

Cata's sentence; (v) whether the Fifth Amendment to the Constitution of the United States of America prohibits the Court from requiring Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release; and (vi) whether the Court may not require Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release, because polygraph examinations are unreliable. The Court concludes that: (i) the USSG § 2A3.1(b)(1) 4-level enhancement does not apply; (ii) the USSG § 2A3.1(b)(4)(B) 2-level enhancement does not apply; (iii) the USSG § 3A1.1(b)(1) 2-level enhancement applies; (iv) the USSG § 4B1.5(b)(1) 5-level enhancement applies; (v) the Fifth Amendment does not prohibit the Court from requiring Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release; nevertheless, at the time of any polygraph examination, Calvert-Cata may invoke the Fifth Amendment privilege and refuse to answer an incriminating question; and (vi) reliability concerns do not prohibit the Court from requiring Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release. Accordingly, the Court will sustain in part and overrule in part the Plaintiff United States' and Calvert-Cata's respective objections to the Presentence Investigation Report, filed May 12, 2017 (Doc. 35)("PSR").

## **FACTUAL BACKROUND**

The Court provides as a factual background those facts that Calvert-Cata admitted in his plea agreement. See Plea Agreement ¶ 8, at 3-4, filed March 6, 2017 (Doc. 32)("Plea Agreement"). Calvert-Cata admitted:

> On or about August 13, 2016, in Indian Country, in Rio Arriba County, in the District of New Mexico, I, Peter Calvert-Cata, an Indian, unlawfully and

>     knowingly attempted to engage in a sexual act with Jane Doe.  I touched her breasts and genitalia.  I then attempted penetration of Jane Doe's genital opening by my finger, with an intent to arouse my sexual desire.  I attempted to engage in the sexual act with Jane Doe while I knew she was incapable of appraising the nature of my conduct because she was highly intoxicated by alcohol and marijuana.  I did provide the marijuana.

Plea Agreement ¶ 8, at 3-4.

## PROCEDURAL BACKGROUND

Calvert-Cata pled guilty to a single information charging a violation of 18 U.S.C. §§ 1153 and 2242(2), that being sexual abuse occurring in Indian Country.  See Plea Agreement ¶ 3, at 2.  The United States Probation Office ("USPO") disclosed the PSR.  See PSR ¶ 1, at 3.  The USPO also disclosed Attachment A to the Presentence Report, filed May, 12, 2017 (Doc. 35-1)("PSR Attachment A").  Both the United States and Calvert-Cata objected to the PSR's application of various sentencing enhancements.  See Defendant's Objections ¶¶ 1-4, at 4-5; Sentencing Memorandum at 4.  The USPO maintains that it correctly applied each enhancement to which the United States and Calvert-Cata objects.  See Addendum to the PSR at 3-7, filed August 2, 2017 (Doc. 46)("Addendum").

Calvert-Cata further objects to a specific condition of supervised release.  In PSR Attachment A, the USPO recommends that the Court impose the following condition: "[Y]ou must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider.  You may be required to pay a portion of all the cost of the assessments and treatment."  PSR Attachment A at 3.  Calvert-Cata objects to this condition of supervised release on both Fifth Amendment and reliability grounds.  See Defendant's Sentencing Memorandum at 4-5.

**ANALYSIS**

First, the USSG § 2A3.1(b)(1) 4-level enhancement does not apply. Second, the USSG § 2A3.1(b)(4)(B) 2-level enhancement does not apply. Third, the USSG § 3A1.1(b)(1) 2-level enhancement applies. Fourth, the USSG § 4B1.5(b)(1) 5-level enhancement applies. Fifth, the Fifth Amendment does not prohibit the Court from requiring Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release; however, at the time of the polygraph, Calvert-Cata may nevertheless invoke the Fifth Amendment privilege and refuse to answer an incriminating question. Last, reliability concerns do not prohibit the Court from requiring Calvert-Cata to submit to clinical polygraph examinations, as directed by a probation officer or treatment provider, as a condition of supervised release.

**I.    THE USSG § 2A3.1(B)(1) 4- LEVEL ENHANCEMENT DOES NOT APPLY.**

The PSR applies a 4-level increase under USSG § 2A3.1(b)(1), because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b). See PSR ¶ 29, at 7. Both the United States and Calvert-Cata object to the application of the § 2A3.1(b)(1) 4-level increase. See Defendant's Objections ¶ 1, at 4; Sentencing Memorandum at 4. The USPO maintains that the § 2A3.1(b)(1) 4-level enhancement was correctly applied. See Addendum to the PSR at 3, filed August 2, 2017 (Doc. 46)("Addendum"). The USPO relies on § 2A3.1 Application Note 2, which states that "[t]his provision would apply, for example . . . in a case in which the ability of the victim to appraise or control conduct was substantially impaired by drugs or alcohol." USSG § 2A3.1(b)(1) app. n.2. See Addendum at 3.

The § 2A3.1(b)(1) 4-level enhancement does not apply. That section directs the Court to increase the offense level if the offense involves conduct that 18 U.S.C. § 2241(a) or (b)

describes. "As the text of these statutory provisions makes clear, they penalize conduct intended to overcome another person's lack of consent to a sexual act, whether achieved through physical force, threats of force, or other means that render the other person unconscious or otherwise unable to fend off the assault." United States v. Volpe, 224 F.3d 72, 77 (2d Cir. 2000). Looking to 18 U.S.C. § 2241(a) and (b)'s text, Calvert-Cata's offense does not involve conduct that either subsection describes. See 18 U.S.C. § 2241(a)-(b).

The elements of force and threat that 18 U.S.C. § 2241(a) or (b) establish do not describe Calvert-Cata's § 2242(2) offense. The only statutory subsection within § 2241(a) or (b) that arguably describes Calvert-Cata's offense conduct is in 18 U.S.C. § 2241(b)(2), which prohibits a person from

> administering to another person by force or threat of force, or without knowledge of permission of that person, a drug, intoxicant, or other similar substance and thereby (A) substantially impairs the ability of that other person to appraise or control conduct; and (B) engages in a sexual act with that person . . . .

18 U.S.C. § 2241(b)(2). By preponderance of the evidence, however, the Court concludes that Calvert-Cata did not administer drugs or intoxicants to the victim by force or without the victim's knowledge.

In his plea agreement, Calvert-Cata avers that he "provided marijuana," Plea Agreement ¶ 8, at 4, and the record shows that he brought a bottle of vodka to G.T.'s residence, see Report of Defense Investigator Danny Garcia at 15, filed August 4, 2017 (Doc. 47)("Defense Investigator Report"). Calvert-Cata did not aver in his plea agreement, however, that he administered drugs or alcohol to the victim by force or without the victim's knowledge, and the record does not, by a preponderance of the evidence, show otherwise. Accordingly, the § 2A3.1(b)(1) 4-level enhancement does not apply. The Court therefore sustains the United States' and Calvert-Cata's corresponding objections.

## II. THE USSG § 2A3.1(B)(4)(B) 2-LEVEL ENHANCEMENT DOES NOT APPLY.

The PSR applies a 2-level increase under USSG § 2A3.1(b)(4)(B), because the victim sustained injuries and emotional trauma. See PSR ¶ 30, at 7. Both the United States and Calvert-Cata object to the application of the § 2A3.1(b)(4)(B) 2-level increase. See Defendant's Objections ¶ 2, at 4; Sentencing Memorandum at 4. The USPO maintains the § 2A3.1(b)(4)(B) 2-level enhancement was correctly applied, because the victim "sustained sexual injuries as detailed in the [Sexual Assault Nurse Evaluation] report" and suffered emotional trauma. Addendum at 3.

The USSG § 2A3.1(b)(4)(B) 2-level enhancement does not apply. That section directs the Court to increase by 2 levels "if the victim sustained serious bodily injury." USSG § 2A3.1(b)(4)(B). USSG § 2A3.1 Application Note 1 states that "for the purposes of this guideline, '*serious bodily injury*' means conduct other than criminal sexual abuse, which is already taken into account in the base offense level under subsection (a)." USSG § 2A3.1 app. n. 1 (emphasis in original). The United States Court of Appeals for the Tenth Circuit has stated, however, that "the two-level serious-bodily-injury enhancement can still apply to a sexual abuse offender, but it must be based on the fact that the victim's injuries meet" USSG § 1B1.1 Application Note 1's definition of "serious bodily injury," according to which "serious bodily injury" is "'injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation'" United States v. Jim, 786 F.3d 802, 814 (10th Cir. 2015)(quoting USSG § 1B1.1 app. n.1(L)). Consequently, the Tenth Circuit holds that

> a sentencing court can consider injuries the victim suffered resulting directly from the sexual abuse as well as those suffered during relevant conduct surrounding that offense when determining whether the victim suffered serious bodily injury, defined as injury involving extreme physical pain or the protracted impairment of

> a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation . . . .

United States v. Jim, 786 F.3d at 815 (citation omitted). See United States v. Volpe, 224 F.3d 72, 78 (2d Cir. 2000)(noting that § 2A3.1(b)(4)'s "degree-of-injury adjustment punishes the assailant for the injuries to the victim *that result from the assault*")(emphasis in original).

The Court concludes that the victim suffered injuries involving extreme physical pain. See PSR ¶ 10, at 4. The Court also concludes, however, that those injuries did not result from Calvert-Cata's offense conduct. A preponderance of the evidence indicates that G.T., not Calvert-Cata, caused the victim's "serious bodily injury," as the Tenth Circuit defines that term. The Court notes that Sexual Assault Nurse Evaluation Report summary indicates that the victim stated that she was unsure whether Calvert-Cata vaginally penetrated her, but stated that Calvert-Cata anally penetrated her. See Defendant's Replies to PSR Addendum and Government's Response to Defendant's Sentencing Memorandum at 2 (providing the Sexual Assault Nurse Evaluation Summary of Acts Described by Patient). The victim "latter admitted," however, that "she made up some of the story as she felt pressured by her grandmother and others to add details of the sexual assault to improve the chances of the prosecution of [G.T.] and the defendant." PSR ¶ 14, at 4-5. Next, the Defense Investigator Report indicates that G.T. stated that he engaged in vaginal and anal sex with the victim at a time nearly contemporaneous to Calvert-Cata's offense conduct. See Defense Investigator Report a 4. Moreover, while Calvert-Cata avers that he "attempted to engage in the sexual act" with the victim, Plea Agreement ¶ 8, at 4, the record indicates that, at the time of this attempt, Calvert-Cata did not have an erection and, hence, could not have caused the victim's injuries, see Defense Investigator Report a 4. The United States, therefore, concedes that "it could be argued that the injuries sustained by [the victim] are a result of G.T.'s actions" and that "[t]here is no way of telling what injuries

Defendant may have caused." Sentencing Memorandum at 4. Looking to the record evidence, the Court concludes that a preponderance of evidence does not support that Calvert-Cata caused the victim's injuries. Accordingly, the USSG § 2A3.1(b)(4)(B) 2-level enhancement does not apply. The Court therefore sustains the United States' and Calvert-Cata's corresponding objections.

### III.  THE USSG § 3A1.1(B)(1) 2-LEVEL ENHANCEMENT APPLIES.

The PSR applies a 2-level increase under USSG § 3A1.1(b)(1), because "[t]he defendant knew or should have known the victim of the offense was a vulnerable victim." PSR ¶ 31, at 7. Both the United States and Calvert-Cata object to the application of the § 3A1.1(b)(1) 2-level increase. See Defendant's Objections ¶ 3, at 4; Sentencing Memorandum at 4. The USPO maintains that it correctly applied the § 3A1.1(b)(1) 2-level enhancement "for the reasons stated in paragraph 31 of the presentence report." Addendum at 3.

The USSG § 3A1.1(b)(1) 2-level enhancement applies. USSG § 3A1.1(b)(1) directs the Court to increase by 2 levels "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim . . . ." USSG § 3A1.1(b)(1). Calvert-Cata objects that this enhancement does not apply, because the victim "was a young woman of 17 years old who had engaged [in] alcohol and drug use many times . . . ." Defendant's Objections ¶ 3, at 4 (alteration added). Calvert-Cata's objection is belied, however, by his averment, made in his Plea Agreement, that Calvert-Cata "knew [the victim] was incapable of appraising the nature of [his] conduct because she was highly intoxicated by alcohol and marijuana." Plea Agreement ¶ 8, at 4.

The United States, for its part, makes a double-counting objection to the application of USSG § 3A1.1(b)(1)'s 2-level enhancement. See Sentencing Memorandum at 4. According to

the United States, "the two level vulnerable victim adjustment . . . should be excluded as the base covers 18 U.S.C. § 2242 crimes . . . ." Sentencing Memorandum at 4. The Court understands the United States' argument. USSG § 3A1.1 Application Note 2 states: "Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." USSG § 3A1.1 app. n.2. Calvert-Cata pled guilty to a 18 U.S.C. § 2242(2) violation, which makes it a criminal offense to "engage[] in a sexual act with another person if that other person is (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act; or attempts to do so . . . ." The base offense level for a violation of 18 U.S.C. § 2242(2) is 30. See USSG § 2A3.1(a)(2). Thus, the United States argues that the base offense level for a 18 U.S.C. § 2242(2) violation already incorporates a special punishment for the victim's vulnerability.

The Court overrules the United States' objection. The Court does not follow the United States' reading of USSG § 3A1.1 Application Note 2. The USSG § 3A1.1 Application Note 2 instructs the Court to "not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated <u>in the offense guideline</u>" and not in the underlying statutory offense's elements. USSG § 3A1.1 app. n.2 (emphasis added). Thus, the Court does not agree that USSG § 3A1.1 Application Note 2 supports the United States' double-counting objection to the application of USSG § 3A1.1(b)(1)'s 2-level enhancement in cases where the underlying offense is a violation of 18 U.S.C. § 2242(2).

The Tenth Circuit has not ruled on the United States' specific double-counting objection to the application of USSG § 3A1.1(b)(1), where the underlying conviction is for a violation of 18 U.S.C. § 2242(2). The United States Court of Appeals for the Eighth Circuit has rejected,

however, the United States' argument. See United States v. Schoenborn, 793 F.3d 964, 967-68 (8th Cir. 2015). In United States v. Schoenborn, the Eighth Circuit stated that "'[d]ouble counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been . . . accounted for by application of another part of the Guidelines.'" 793 F.3d at 967 (alterations original)(quoting United States v. Joiner, 418 F.3d 863, 870 (8th Cir. 2005)). The Eighth Circuit further explained that "'the question is not whether the statute of conviction specifically incorporates the elements of the disputed enhancement, but whether the applicable guideline specifically incorporates it." United States v. Schoenborn, 793 F.3d at 967 (alterations original)(quoting United States v. Joiner, 418 F.3d at 870).

Applying those principles, the Eighth Circuit recognized that, while 18 U.S.C. § 2242(2) "does include, as an element, the incapacity of the victim -- here, incapacity due to extreme intoxication," the Guidelines provision used to calculate the corresponding base offense level, USSG § 2A3.1(a)(2), "does not." United States v. Schoenborn, 793 F.3d at 967. Instead, the Eighth Circuit explained that "§ 2A3.1 applies to all sexual abuse offenses under 18 U.S.C. §§ 2241 and 2242," and that "§ 2A3.1 does not incorporate an enhancement for a specific offense characteristic based on the incapacity of the victim." United States v. Schoenborn, 793 F.3d at 967. The Eighth Circuit accordingly held that, "[a]s the victim's vulnerability in [the case before the court] was not accounted for in either the base offense level or a specific offense characteristic, we conclude the enhancement was appropriately applied." 793 F.3d at 967-68 (alterations added)(citing United States v. Betone, 636 F.3d 384 (8th Cir. 2011)(upholding the vulnerable victim enhancement to the base offense level under 18 U.S.C. § 2242(2) when the victim was passed out after a night of drinking). Accordingly, the USSG § 3A1.1(b)(1) 2-level

enhancement applies. The Court therefore overrules the United States' and Calvert-Cata's corresponding objections.

## IV. THE USSG § 4B1.5(B)(1) 5-LEVEL ENHANCEMENT APPLIES.

The PSR applies a 5-level increase under USSG § 4B1.5(b)(1), because "the defendant is a repeat and dangerous sex offender against minors . . . ." PSR ¶ 35, at 8. According to the PSR, "as detailed in offense behavior not part of relevant conduct, the defendant had sexual intercourse with a 13 year old girl when he was age 20, just a few months prior to the instant offense." PSR ¶ 35, at 8. Calvert-Cata does not object to the finding that he had sexual intercourse with a thirteen-year-old when he was twenty, although he states that he "never pressured [that person] to have sex with him." Defendant's Objections ¶ 10, at 3. Rather, Calvert-Cata objects to this 5-level increase, because "[t]he instant offense is not a 'covered sex crime.'" Defendant's Objections ¶ 4, at 4-5. Calvert-Cata also objects that he "pled guilty to violation of 18 U.S.C. § 2242(2), simple sex abuse with a person, not a minor . . . ." Defendant's Objections ¶ 4, at 5. For its part, the United States represents that it "chose not to consider the five level adjustment under USSG § 4B1.5(b)(1) when conveying the plea offer . . . ." Sentencing Memorandum at 5. The United States stipulates, nevertheless, that the enhancement "would technically apply." Sentencing Memorandum at 5. The USPO maintains that it correctly applied the enhancement. See Addendum at 7.

The USSG § 4B1.5(b)(1) 5-level enhancement applies. USSG § 4B1.5(b)(1) directs the Court to increase the offense level by 5 levels "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct . . . ." USSG § 4B1.5(b)(1). USSG § 4B1.5 Application Note 2 provides that "the instant offense of conviction must be a covered sex crime,

*i.e.*: (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code . . . ." USSG § 4B1.5 app. n.2. The Court concludes Calvert-Cata's offense is a "covered sex crime" under USSG § 4B1.5(b)(1). Calvert-Cata pled guilty to a violation of 18 U.S.C. § 2242(2), a statutory offense under Chapter 109A of Title 18, United States Code.

The Court further concludes that Calvert-Cata perpetuated his offense against a minor. USSG § 4B1.5 Application Note 1 provides that, "[f]or purposes of this guideline, 'minor' means (A) an individual who had not attained the age of 18 years . . . ." USSG § 4B1.5 app. n. 1. At the time of Calvert-Cata's offense, the victim was seventeen years old. See PSR ¶ 10, at 3. She, therefore, was a minor. USSG § 4B1.5 Application Note 1. Accordingly, the USSG § 4B1.5(b)(1) 5-level enhancement applies. The Court overrules Calvert-Cata corresponding objections.

### V. THE FIFTH AMENDMENT DOES NOT PROHIBIT THE COURT FROM REQUIRING CALVERT-CATA TO SUBMIT TO POLYGRAPH EXAMINATIONS AS A CONDITION OF SUPERVISED RELEASE.

In Attachment A to the Presentence Report, filed May 12, 2017 (Doc. 35-1)("PSR Attachment A"), the USPO recommends that the Court impose the following condition: "[Y]ou must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider. You may be required to pay a portion of all the cost of the assessments and treatment." PSR Attachment A at 3.

First, Calvert-Cata objects that the imposition of this condition of supervised release jeopardizes his right against self-incrimination that the Fifth Amendment to the Constitution of the United States of America guarantees. See Defendant's Sentencing Memorandum and Objection to Part of a Special Condition of Supervised Release at 4, filed July 25, 2017 (Doc. 43)("Defendant's Sentencing Memorandum"). Calvert-Cata asserts that "[t]here is a real

danger . . . that [he] will be forced to incriminate himself if the condition of supervised release sought by the probation officer here is allowed to stand." Defendant's Sentencing Memorandum at 5. Calvert-Cata relies on United States v. Van Berhen, 822 F.3d 1139 (10th Cir. 2016), to argue that "if a historical psychosexual evaluation is contemplated and questions involving past conduct are posed, Mr. Calvert-Cata's Fifth Amendment rights would be implicated and he cannot answer questions that will incriminate him." Defendant's Sentencing Memorandum at 4 (citing United States v. Van Berhen, 822 F.3d at 1139).

The United States responds that Calvert-Cata's Fifth Amendment claim is speculative, because "at this moment there has been no potentially incriminating polygraph questions regarding past sexual conduct, no threat that failure to answer such historical questions may result in revocation or other substantial penalties, much less any government compulsion to testify over a valid claim of privilege." United States' Response to Defendant's Sentencing Memorandum and to Objections at 3, filed July 28, 2017 (Doc. 45)("United States' Response"). The United States contends that Calvert-Cata "can still assert his Fifth Amendment privilege at the time of polygraphy questioning if he wishes." United States' Response at 4. If, at the point of actual questioning, Calvert-Cata "is then threatened with revocation and his terms of supervision [are] conditioned on his waiving of [his] Fifth Amendment privilege with respect to further criminal prosecution, then this can be considered by the Court." United States' Response at 4. At this juncture, however, the United States maintains that, because there are (i) no polygraph questions, (ii) no contract that the polygraph examiner report incriminating statements to law enforcement, and (iii) no immediate threat of the revocation of supervised release, there is no present compulsion and, consequently, no Fifth Amendment violation. See United States' Response at 4-5.

The Court will overrule Calvert-Cata's Fifth Amendment objection. The supervised release condition states that Calvert-Cata "must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider." Addendum at 3. That condition alone does not satisfy compulsion for the purposes of a Fifth Amendment claim.

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." United States v. Von Behren, 822 F.3d 1139, 1144 (10th Cir. 2016)(internal quotation marks and citations omitted). "There is no doubt that answering questions during a polygraph examination involves a communicative act which is testimonial." United States v. Von Behren, 822 F.3d at 1144. Further, the Court credits the argument that the polygraph examination to which Calvert-Cata "must submit" might elicit potentially incriminating statements that could "provide a 'lead' or 'a link in the chain of evidence needed to prosecute' the speaker.'" United States v. Von Behren, 822 F.3d at 1145. After all, the polygraph examination's purpose is not to elicit truthful responses to innocuous and uninteresting inquiries as, for example, whether Calvert-Cata enjoyed his breakfast.

The Court does not conclude, however, that the polygraph condition satisfies the compulsion element of Calvert-Cata's Fifth Amendment objection. Minnesota v. Murphy, 465 U.S. 420, 435 (1984), is the flagship case regarding the compulsion element. There, the Supreme Court of the United States made clear:

> There is . . . a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

Minnesota v. Murphy, 465 U.S. at 435. In Minnesota v. Murphy, the Supreme Court held that the "classic penalty" did not apply, determining that "there is no reasonable basis for concluding that Minnesota attempted to attach an impermissible penalty to the privilege against self-incrimination." 465 U.S. at 437. The Supreme Court observed not only that Murphy's probation officer did not inform Murphy that the invocation of his Fifth Amendment privilege would result in the revocation of his probation, but also the relevant Minnesota statute did not make revocation of probation automatic upon the violation of a condition of probation. See Minnesota v. Murphy, 465 U.S. at 437.

Following Minnesota v. Murphy, the Tenth Circuit made clear in United States v. Von Behren that "the government's threat to revoke [a defendant's] supervised release for his failure to answer potentially incriminating questions rises to the level of unconstitutional compulsion." 822 F.3d at 1148. In contrast to the Supreme Court's holding in Minnesota v. Murphy, however, in United States v. Von Behren, the Tenth Circuit held "that the government compelled Mr. Von Behren to be a witness against himself," 822 F.3d at 1151, where "[t]he government asserted . . . that it would seek Mr. Von Behren's remand to prison if he refused to answer incriminating sexual polygraph questions because that refusal would (and did) ultimately result in his termination from the sex offender treatment program," 822 F.3d at 1150.

This case is more like Minnesota v. Murphy than United States v. Von Behren. Neither in the Addendum nor elsewhere has the USPO, or any other entity, threatened to revoke Calvert-Cata's supervised release for his failure to answer a specific question posed during a polygraph examination. Nor, in the light of Minnesota v. Murphy and United States v. Von Behren, could the USPO credibly make that threat. See Minnesota v. Murphy, 465 U.S. at 435; United States v. Von Behren, 822 F.3d at 1151. The USPO may neither revoke Calvert-Cata's supervised

release because he invokes the Fifth Amendment nor threaten to revoke Calvert-Cata's supervised release because he invokes the Fifth Amendment. See Minnesota v. Murphy, 465 U.S. at 435; United States v. Von Behren, 822 F.3d at 1151. It does not follow, however, that the United States necessarily cannot subject Calvert-Cata to a sexual polygraph examination as a term of his supervised release. The Court can impose such a condition of supervised release. It cannot, however, threaten to send Calvert-Cata to prison if, at the time of the polygraph examination, he asserts his Fifth Amendment privilege and refuses to answer an incriminating question. See Minnesota v. Murphy, 465 U.S. at 435; United States v. Von Behren, 822 F.3d at 1151. Cf. United States v. Ramos, 685 F.3d 120, 127 (2d Cir. 2012)("[A] supervisee is deemed to have been compelled to speak only where he is required by the government to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.")(internal quotation marks and citations omitted). In short, the Court can subject Calvert-Cata to a polygraph examination, but, if he invokes his Fifth Amendment privilege, the Court cannot compel his response by conditioning his continued supervised release upon his answer. Accordingly, the Court overrules Calvert-Cata's Fifth Amendment objection to imposition of a sexual polygraph as a condition of his supervised release.

## VI.  RELIABILITY CONCERNS DO NOT PROHIBIT THE COURT FROM REQUIRING CALVERT-CATA TO SUBMIT TO POLYGRAPH EXAMINATIONS AS A CONDITION OF SUPERVISED RELEASE.

Calvert-Cata objects to the submission of polygraph examinations, because he maintains that polygraph testing is "'inherently unreliable.'" Defendant's Sentencing Memorandum at 5-6 (quoting United States v. Thomas, 167 F.3d 299, 308 (6th Cir. 1999)). The Court overrules this objection. The Court may order a condition of supervised release to the extent that such factor is reasonably related to the § 3553(a) factors and involves no greater deprivation of liberty than is

reasonably necessary to achieve the factor to which it reasonably relates. See 18 U.S.C. § 3583(d); United States v. Hahn, 551 F.3d 977, 983-84 (10th Cir. 2008). The Tenth Circuit has noted that polygraph testing promotes candor between a defendant and a probation officer, and, furthermore, has a tendency to alert the USPO to potential problems which "would prompt further supervisory inquiry." United States v. Begay, 631 F.3d 1168, 1175 (10th Cir. 2011). Prescinding from the reliability of polygraph testing, the Court concludes that the polygraph's candor-promoting effects serve the § 3553(a) factors, especially those of deterrence and the provision of correctional treatment. See 18 U.S.C. § 3553(a)(2)(B)-(D). The Court also notes that, in addition to the Tenth Circuit, several other circuits have upheld the imposition of polygraph testing as a special condition of supervised release. See, e.g., United States v. Johnson, 446 F.3d 272, 277 (2d Cir. 2006); United States v. Dotson, 324 F.3d 256, 261 (4th Cir. 2003); United States v. Zinn, 321 F.3d 1084, 1090 (11th Cir. 2003); United States v. Lee, 315 F.3d 206, 217 (3d Cir. 2003). Accordingly, the Court overrules Calvert-Cata's reliability objection to the submission to polygraph examinations.

**IT IS ORDERED** that: (i) the Defendant's Objections to Pre-Sentence Report, filed July 13, 2017 (Doc. 40); (ii) the United States' Sealed Objections to Pre-Sentence Report and Response to Defendant's Objections to Pre-Sentence Report, filed July 17, 2017 (Doc. 41); (iii) the United States' Sealed Sentencing Memorandum, filed July 21, 2017 (Doc. 42); and (iv) the Defendant's Sentencing Memorandum and Objection to Part of a Special Condition of Supervised Release, filed July 25, 2017 (Doc. 43), are sustained in part and overruled in part.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

*Counsel:*

Lucy B. Solimon
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Sylvia A. Baiz
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorney for the Defendant*